# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# PANAMA CITY DIVISION

VERNON H. MILLER, JR.,

    Plaintiff,

v.        CASE NO. 5:05cv130-RH/WCS

PATRICIA J. SWANSON, et al.

    Defendants.

_____/

## ORDER AWARDING INSURANCE PROCEEDS

This matter is before the court on the magistrate judge's report and recommendation (document 29), to which there were no formal objections. In the course of reviewing the report and recommendation, the court learned that defendants, proceeding *pro se*, had not received service of certain notices and orders due to a clerical error. Accordingly, the report and recommendation will not be accepted, because its result was based on defendants' failure to participate in this action. At a telephonic status conference on August 23, 2006, plaintiff and one of the defendants explained their positions and asked for this court's determination of this action as a matter of law based on jointly stipulated facts.

# I
# Background

The action involves a dispute over life insurance proceeds for which the insured made conflicting beneficiary designations. On July 28, 1978, Mr. Pietro Rotondo completed two separate records designating the beneficiaries of his life insurance policy through the benefits program of his employer, International Paper Company. On one record, he designated his nephew Vernon H. Miller, Jr., as the sole beneficiary. On the other, he designated his niece Patricia J. Swanson as a 50% beneficiary and his niece Joanne Hegwood as a 50% beneficiary. There is no evidence of the sequence in which the designations were executed, and the parties have stipulated that the designations should be treated as having been made simultaneously.

Mr. Rotondo died on April 16, 2004. The insurance plan administrator, Metropolitan Life Insurance Company ("MetLife"), was unable to determine the proper beneficiaries due to the conflicting designations and so notified Mr. Miller, Ms. Swanson and Ms. Hegwood.

Mr. Miller filed this action against MetLife, which filed a counterclaim for interpleader, adding Ms. Swanson and Ms. Hegwood as parties to the action. MetLife was discharged from the action upon depositing the insurance proceeds, $10,796.98, into the court registry. The action remained pending between Mr.

Miller on one side, and Ms. Swanson and Ms. Hegwood on the other.

## II
## Discussion

The principal question here is whether such conflicting designations of life insurance beneficiaries result in (i) an equal division between the *designations* (that is, half to Mr. Miller and the other half shared by Ms. Swanson and Ms. Hegwood), (ii) an equal division between the *designees* (that is, one-third each to Mr. Miller, Ms. Swanson and Ms. Hegwood), or (iii) a failure of the designations entirely.  No party to this action asserts the designations should fail entirely.  The parties agree that the proceeds should be allocated among the three designees; the dispute is over their respective shares.

There is no apparent precedent or statute directly governing the outcome under these circumstances.  Closely analogous, however, are conflicting devises by a testator, where the testator devises identical property to different devisees by different provisions of the same will.  There was considerable debate among early leading common law jurists about the outcome in such a situation.  Some, such as Lord Edward Coke, held that the latter provision of the will abrogated the former. *See* EDWARD COKE, THE FIRST PART OF THE INSTITUTES OF THE LAWS OF ENGLAND 112b (Francis Hargrave ed., London, 13th ed. 1775).  The majority, however, held that the two devisees should take concurrently.  *See id.* at 112b-113a

n.1 ("But the opinion, supported by the greatest number of authorities, is that the two devisees shall take in moieties").  Thomas Jarman's TREATISE ON WILLS affirmed and elaborated on this "reconciling construction."[1]

Early American courts followed this common law authority, though not uniformly.  For instance, in 1829 the Supreme Court of North Carolina held that where a will devised the same slave to more than one devisee, and the bequests were in the same language, each devisee took half.  *See Field vs. Eaton*, 1 Dev. Eq. 283, 16 N.C. 283.[2]  On the other hand, the Maryland Court of Appeals in 1850

---

[1] Mr. Jarman illustrates the application of this "better opinion" through Lord Brougham's holding in *Sherrat v. Bentley,* "'If in one part of a will . . . an estate is given to A., and afterwards the same testator gives the same estate to B., adding words of exclusion, as 'not to A.,' the repugnance would be complete, and the rule [of Lord Coke] would apply.  But if the same thing be given, first to A. and then to B., unless it be some indivisible chattel . . . the two legatees may take together without any violence to the construction.  It seems, therefore, by no means inconsistent with the rule, as laid down by Lord Coke and recognized by the authorities, that a subsequent gift, entirely and irreconcilably repugnant to a former gift of the same thing, shall abrogate and revoke, if it be also held that, where the same thing is given to two different persons in different parts of the same instrument, each may take a moiety; though, had the second gift been in a subsequent will, it would, I apprehend, work a revocation.'"  1 THOMAS JARMAN, A TREATISE ON WILLS 417-18 (London, 1st ed. 1844).

[2] The opinion remarked:  "Distinguished jurists of modern times, with all the wisdom of former ages, and all the lights of experience before them, have sanctioned the opinion expressed in *Plowden* [in the case of *Parramore v. Yardley*], that the devisees shall take in moieties: rejecting the old doctrines, that the devises are void for uncertainty; and that the latter devise is a revocation of the former.  I shall adopt the modern opinion and declare that these legatees take in moieties; solacing myself with the reflection, if it be erroneous, that it is the accepted opinion of modern times – is supported by the greatest number of

voted 3-2 that a latter section of a will abrogated the former where the bequest of a house was made first to a son of the testator and later (in the same will) to a trustee for his two grandsons. The minority believed that the devisees should each take half, such that the trustee of the minor grandsons should take their collective half to hold until they reached majority. *See Hollins v. Coonan*, 9 Gill 62, 1850 WL 3326 at *5.[3]

*Hollins* is the only case I have found in which one bequest was to a single individual, while the other bequest was to more than one. Because of its holding that the latter bequest abrogated the former, the majority did not address the issue in the case at bar—whether two conflicting but valid designations should be allocated equally between designations or equally between designees. The minority asserted that the allocation should be equal as between designations, not designees. Scant though it is, this apparently is the only authority on this issue.

I conclude that the conflicting designations in the case at bar should not be held to invalidate one another. This conclusion draws support from the majority

---

authorities – and has the sanction of distinguished names."

[3] A later Maryland decision acknowledged that the *Hollins* majority's holding, though it followed authority of those whose "legal learning entitles them to great respect," nonetheless was not "supported by the greatest number of authorities." *Dugan v. Dugan Hollins*, 13 Md. 149, 1859 WL 5037 at *8 (1859). The court declined to revise the earlier decision, however, stating that the earlier court's error, "if the majority . . . erred at all, . . . was certainly upon a very doubtful question, to say the least of it." *Id.*

view that a devise within a will ordinarily does not invalidate an earlier devise of the same property set forth in the same will. And this result seems especially appropriate when, as here, neither devise can be said to be "former" or "latter"; though Mr. Rotondo undoubtedly signed one or the other of the designations first, there is no way of knowing which one that was. Invalidating *both* designations clearly would not accord with his intent.

I conclude further that the allocation should be equal between designations, not equal among designees. This seems the better resolution as a matter of common sense. Whatever Mr. Rotondo had in mind—that each designation would be given effect with respect to the single insurance policy now at issue, or that he was signing designations for different policies—there is no reason to believe he intended either designation to provide a greater recovery than the other, and, if he did, there is no way of knowing *which* designation he intended to provide the greater recovery. There also is no reason to believe Mr. Rotondo intended these three beneficiaries—Mr. Miller, Ms. Swanson, and Ms. Hegwood—to recover the same amounts. If *that* was his intent, he presumably would have signed one designation listing all three beneficiaries, or perhaps three separate designations, but it would have made no sense to sign two, as in fact occurred. Finally, this result is supported by the only authority that addresses the matter, the *Hollins* dissent.

For these reasons,

IT IS ORDERED:

1. The clerk shall pay one-half of the insurance proceeds held in the registry of the court to plaintiff Vernon H. Miller, Jr.; one-quarter to defendant Patricia J. Swanson; and one-quarter to defendant Joanne Hegwood.

2. The clerk shall enter judgment stating, "It is declared that plaintiff Vernon H. Miller, Jr. is entitled to one-half of the insurance proceeds at issue; defendant Patricia J. Swanson is entitled to one-quarter; and defendant Joanne Hegwood is entitled to one-quarter.  It is ordered that the proceeds be paid accordingly.  All other claims are dismissed with prejudice.  Each party shall bear the party's own costs and attorney's fees."

3. The clerk shall close the file.

SO ORDERED this 12th day of September, 2006.

s/Robert L. Hinkle<br>
Chief United States District Judge